UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JAMES H. DOORLEY III :
Plaintiff :

V. : C.A. No. CA 06 294ML

UNUM LIFE INSURANCE COMPANY :
OF AMERICA, UNUM PROVIDENT :
CORPORATION, and the RHODE ISLAND :
RESOURCE RECOVERY CORPORATION :
Defendants :

# COMPLAINT

## INTRODUCTION

This is an action under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et. seq.* ("ERISA"), due to the denial of long term disability benefits. Plaintiff, James H. Doorley, III ("Doorley") brings this action against Defendants, Unum Life Insurance Company of America, UnumProvident Corporation, and the Rhode Island Resource Recovery Corporation Long Term Disability Plan (the "Plan"), for violation of the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1001 *et seq.* ("ERISA").

This complaint alleges that the Defendants' engaged in the following conduct in violation of ERISA:

1) the unreasonable and unlawful denial of Doorley's long term disability income benefits ("LTD benefits") despite substantial medical evidence demonstrating his qualifications for LTD benefits;

2) A pattern of rejecting and/or ignoring the substantial evidence supporting Doorley's total disability pursuant to the Plan's terms;

3) Failure to provide Doorley with a fair and full review of his claim; and

4) Failure to provide Doorley with a reasonable claims procedure.

In this action, Mr. Doorley seeks to recover benefits due under the Plan; to enforce his rights existing under the Plan; to clarify his rights under the Plan; and to recover his attorneys' fees and costs.

## I. THE PARTIES

1. Plaintiff, James H. Doorley, III ("Doorley") is a person with a residence at 112 Fort Avenue, Cranston, Rhode Island.

2. Upon information and belief, Defendant, Unum Life Insurance Company of America, is a for-profit corporation organized and existing under the laws of Delaware with its principle place of business at 2211 Congress Street, Portland, Maine. Unum Life Insurance Company of America transacts insurance business in Rhode Island, underwrites the Plan, and is the party responsible for processing claims under the Plan and making final determinations as to Plan participants' eligibility for LTD benefits.

3. Upon information and belief, Defendant, UnumProvident Corporation, is a for-profit corporation organized and existing under the laws of Delaware with its principle place of business at One Fountain Square, Chattanooga, Tennessee. UnumProvident Corporation conducts insurance business in Rhode Island and, upon information and belief, is the owner of Unum Life Insurance Company of America.

4. The Plan under which Mr. Doorley seeks recovery is a "long term disability plan" issued by UNUM to Rhode Island Resource Recovery Corporation, a quasi-governmental agency that manages Rhode Island's recycling program and owns and

operates the Central Landfill and Materials Recycling Facility in Johnston, Rhode Island. Rhode Island Resource Recovery Corporation has a distinct legal existence from the State of Rhode Island and is not a department of the state government. R.I. Gen. Laws §23-19-6.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 29 U.S.C. §1132(a)(1)(b) because this matter involves a question of federal law under ERISA.

6. Mr. Doorley has exhausted all internal administrative avenues provided by Defendants and has received a final denial of his claims.

7. Venue is appropriate in this Court, under 29 U.S.C. §1132(e)(2), because the alleged breach of ERISA occurred in the District of Rhode Island.

## III. FACTS COMMON TO ALL COUNTS AND CLAIMS

8. Doorley is a 51 year old male.

9. For 16 years, prior to the onset of his disability in or about April 1997, Doorley served as Landfill Manager for the Rhode Island Resource Recovery Corporation.

10. Doorley's occupation, as defined by the Dictionary of Occupational Titles ("DOT"), prior to his disability was that of Manager, Solid Waste Disposal [184.167-078]. Mr. Doorley's occupation is deemed "medium." Doorley's occupation required him to spend most of his work hours outside, in all weather conditions, to traverse rough and uneven terrain, and to operate heavy equipment and machinery.

11. For a period up to and including the date of his disability, Doorley was covered as a participant in the Plan, which was sponsored, funded and administered by Doorley's long-term employer, the Rhode Island Resource Recovery Corporation.

12. The Plan provides, among other things, for payment of monthly income benefits to Plan participants who become disabled. The monthly Plan LTD benefit is determined based upon a set percentage of pre-disability monthly earnings.

13. Under the Plan, after having been disabled for more than 36 months, Mr. Doorley is entitled to continued long term disability benefits if he cannot perform "any gainful occupation for which [Mr. Doorley is] reasonably fitted by education, training, and experience." The term "gainful occupation" means any occupation that is or can be expected to provide [Mr. Doorley] with an income of at least equal to 60% of your indexed monthly earnings within 12 months of your return to work."

14. At the time of his disability in 1997, *more than eight years ago*, Mr. Doorley earned an annual salary of $70,434.00. In the more than sixteen years preceding his disability, during his employment at Rhode Island Resource Recovery Corporation, Mr. Doorley had no other employment, education or work experience.

15. In or about April 1997, Mr. Doorley began to suffer for the first time from excruciating muscle spasms in his back. Prior to the onset of his disability in or about April 1997, Doorley had never before experienced back pain.

16. It is undisputed that Mr. Doorley suffers from Scheuremann's disease, a permanent and objective condition consisting of deformity or "severe kyphosis" of his thoracic spine.

17. In addition to Scheuremann's diseasse, Mr. Doorley also has been diagnosed with degenerative disc disease of the spine, an objective condition comprised of multilevel degenerative discs.

18. Both the Scheuremann's disease and multilevel degenerative disc disease cause spasms of Mr. Doorley's back muscles, chronic back pain, and pain radiating down his legs, also known as sciatica.

19. In addition to Scheuremann's disease and multilevel degenerative disc disease, Mr. Doorley also suffers from thoracic cord syrinx, a rare and objective disorder in which a cyst, or syrinx, forms within the spinal cord. Over time, the syrinx expands and elongates, destroying the center of the spinal cord. The disorder progresses slowly, often leading to progressive weakness in the arms and legs, loss of hand sensation, and severe, chronic pain.

20. At all relevant times herein, Mr. Dorley's primary treating physician, neurologist David DiSanto, has determined that Mr. Doorley is "totally disabled from any and all occupations."

21. Mr. Doorley also has treated with William J. Golini, a neurologist, who prescribed a functional capacity test for Mr. Doorley in or about November 2002, and determined that Mr. Doorley "was not a candidate for even mild sedentary duty." Dr. Golini has deemed Mr. Doorley totally disabled.

22. Mr. Doorley also has been treated by Philippe S. Cote, an orthopaedic surgeon. Dr. Cote also has determined that Mr. Doorley is totally disabled.

23. Mr. Doorley cannot sit, in either a chair or an automobile, for more than twenty to thirty minutes without experiencing significant pain. Similarly, he cannot

stand for extended periods due to pain. Mr. Doorley experiences sustained pain relief only while lying down, typically on a hard surface, such as the floor.

24. Due to his disabling conditions, Mr. Doorley cannot perform the most basic household tasks, thereby relying on his spouse to shop, cook, clean, and maintain both the interior and exterior of their home. He also is unable to engage in activities that require sustained mental concentration for more than brief periods. Mr. Doorley's medical condition has steadily deteriorated since the onset of his disability in April 1997.

25. At all relevant times, UNUM has been in possession of Mr. Doorley's comprehensive medical records, as well as affidavits from Mr. Doorley and his spouse as to Mr. Doorley's significantly limited daily activities, an affidavit from Mr. Doorley about his job requirements and activities, videotaped footage of Mr. Doorley's work site, and correspondence from Mr. Doorley's former employer, Rhode Island Resource Recovery Corporation, detailing Mr. Doorley's job duties and responsibilities.

26. UNUM placed Mr. Doorley under surveillance on at least one occasion. This surveillance confirmed Mr. Doorley's very limited daily activities.

27. Mr. Doorley also has suffered emotional distress and an exacerbation of his physical conditions as a result of UNUM's wrongful actions.

28. Mr. Doorley continues to experience chronic pain despite his routine use of narcotic painkillers such as Vicodin.

29. At all relevant times, Mr. Doorley has satisfied the Plan's definition of disability. He is limited from performing the material and substantial duties of his

regular occupation due to illness, and from performing any other occupation for which his is reasonably suited by basis of his education, training, and experience.

30. UNUM approved, then denied, then reversed its denial of benefits to Mr. Doorley on multiple occasions. Each time that Mr. Doorley was able to successfully refute the proferred basis for disability denial, UNUM subsequently would articulate a "new" basis for claim denial. This process occurred over a period of several years, culminating in a final denial despite the fact that each of Mr. Doorley's treating physicians at the time of final denial deemed him totally disabled under the Plan.

**COUNT I**
**ERISA Violation**
**Enforcement of Plan Terms – Wrongful Denial of Long Term Disability Benefits**
**All Defendants**

31. Mr. Doorley realleges each of the above paragraphs as though fully set forth herein.

32. Mr. Doorley, a Plan beneficiary, has performed all obligations required of him pursuant to the Plan contract.

33. 29 U.S.C. §1132(a)(1)(B) provides that:

A civil action may be brought---

(1) by a participant or beneficiary –

(A) for the relief provided in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

34. UNUM's decisions were not supported by medical evidence and did not correctly apply the language of the Plan.

35. UNUM, as Plan fiduciary, has an obligation to act prudently, in good faith, and solely in the interest of Plan participants and beneficiaries.

36. UNUM was influenced by its financial conflict of interest, as both the administrator of the Plan and the payor of benefits thereunder, when it denied Mr. Doorley's benefits. UNUM acted in bad faith and arbitrarily and capriciously denied Mr. Doorley benefits under the Plan.

37. Defendants' actions constitute an unlawful denial of benefits under ERISA, as provided in 29 U.S.C. §1132(a)(1)(B). UNUM

38. Mr. Doorley is entitled to be paid benefits under thePlan based upon his disabled status from and after October 31, 2001,and continuing to the present.

39. Defendants have failed and refused to provide Mr. Doorley with these disability benefits and, therefore, are in breach of the Plan terms and ERISA, which mandates a full and fair review of all claims and the administration of the Plan in the best interests of Plan participants such as Mr. Doorley.

40. As a direct and proximate cause of Defendants' unlawful denial of benefits under ERISA, Mr. Doorley has been deprived of his rightful long-term disability benefits.

**COUNT II**
**Attorneys' Fees and Costs**
**All Defendants**

41. Mr. Doorley realleges each of the above paragraphs as though fully set forth herein.

42. The Defendants acted in bad faith and arbitrarily and capriciously denied Mr. Doorley benefits under the Plan.

43. The Defendants have the ability to satisfy an award that includes Mr. Doorley's attorneys' fees and costs.

44. Mr. Doorley's conduct in this action serves the best interests of all Plan participants.

45. Mr. Doorley deserves to recover reasonable attorneys' fees and costs for the within action, pursuant to 29 U.S.C. §1132(g).

46. An award of attorneys' fees and costs against the Defendants will deter others from similar conduct.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, James H. Doorley III, prays that this Honorable Court:

A. Declare, adjudge and decreee that Doorley is entitled to ongoing LTD benefits as calculated under the Plan's terms;

B. Award Doorley the full amount of unpaid benefits under the Plan to which he is entitled, together with such pre-judgment interest as may be allowed by law;

C. Award attorneys' fees and costs, pursuant to 29 U.S.C. §1132(g);

D. Award interest on the amount of judgment; and

E. Award such other and further relief as the Court deems just and proper.

Respectfully submitted,

JAMES H. DOORLEY III,
By his attorneys,

CATHERINE A. SAMMARTINO
Bar No. 4762
Sammartino & Berg LLP
Shakespeare Hall
128 Dorrance Street, Suite 400
Providence, RI 02903
(401) 274-0113
(401) 274-0175

MARTA E. GARRETT
Bar No. 7130
Sammartino & Berg LLP
Shakespeare Hall
128 Dorrance Street, Suite 400
Providence, RI 02903
(401) 274-0113
(401) 274-0175

Dated: June 26, 2006